**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

PRATT PAPER (LA), L.L.C.                    CIVIL ACTION NO. 11-1556

VERSUS                                      JUDGE S. MAURICE HICKS, JR.

JLM ADVANCED TECHNICAL                      MAGISTRATE JUDGE HORNSBY
SERVICES, AND TRAVELERS
INSURANCE COMPANY

**MEMORANDUM RULING**

Before the Court is a Motion to Dismiss for Improper Venue filed by the Defendant

JLM Advanced Technical Services ("JLM") (Record Document 13).  JLM's motion is based

on the forum selection clause found in the Standard Terms and Conditions of Sale included

as part of their contract offer.  Plaintiff Pratt Paper opposes the motion on two grounds: 1)

the attached Standard Terms were never separately negotiated or explicitly accepted as

part of the contract, and 2) the forum selection clause included in the Standard Terms is

ambiguous.

For the reasons that follow, JLM's Motion to Dismiss is hereby **DENIED**.

**FACTUAL BACKGROUND**

On June 15, 2010, JLM sent a written proposal via email to Pratt Paper in response

to an earlier request for a quotation.  The email contained two attachments: the JLM

quotation (hereinafter "proposal") and the Standard Terms and Conditions of Sale.  Record

Document 53-4.  The first attachment, JLM's proposal, contained a detailed list of the

requested repairs as well as an estimated total price.  See Rec. Doc. 17-1 at 6.  It also

included a section labeled "NOTES" containing the following phrase: "Terms of serviced

attached."  Id.  The second email attachment contained a two page document titled,

"Standard Terms and Conditions of Sale" (hereinafter "Standard Terms").  See Rec. Doc.

17-1 at 7-8.  Page 2 of the Standard Terms included the following:

> g)  This Contract shall be governed by and construed in
> accordance with the laws of the State of Wisconsin (except choice
> of law provisions).
>
> h)  Any dispute arising out of or in connection with this Contract,
> which the Parties are not able to settle amicably within 3 months
> from the first written request for such settlement, shall be finally
> settled in the Outagamie County Court in Appleton WI and shall be
> conducted in the English language.  Judgment upon the award
> rendered by the court shall be binding and final.

Record Document 17-1 at 8.  After Pratt Paper's representative orally agreed to the

proposal, Pratt Paper and JLM exchanged emails regarding the logistics of commencing

work.  See Rec. Doc. 53 at 1-2.  However, the Standard Terms attached to the offer were

not individually negotiated when the proposal was orally accepted initially and were never

further discussed at any point prior to the commencement of work.  See Rec. Doc. 53-4;

see also Rec. Doc. 53 at 2-5.  This suit subsequently arose from an incident which occurred

while JLM performed repairs as laid out in the contract.  JLM seeks to have this Court

dismiss the case based on the forum selection clause's requirement that any dispute

arising out of or in connection with this Contract, which the Parties are not able to settle

amicably within 3 months from the first written request for such settlement, shall be finally

"settled" in the Outagamie County Court in Appleton, Wisconsin.

## LAW AND ANALYSIS

### I.       Summary Judgment Standard

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil

Procedure when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[1]  Quality Infusion Care, Inc. v. Health Care Serv. Corp., 628 F.3d 725, 728 (5th Cir. 2010).  "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." See Id.  "Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir. 2004). If the movant demonstrates the absence of a genuine dispute of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial."  Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 141 (5th Cir. 2004).

The nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence. Little, 37 F.3d at 1075;  Wallace, 80 F.3d at 1047.  Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted.  See Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir. 2005). Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."  Wallace, 80 F.3d at 1048 (quoting Little, 37

---

[1]The Court notes that the newly amended Rule 56 requires that there be "no genuine *dispute* as to any material fact," but this change does not alter the Court's analysis.  F.R.C.P. 56(a) and advisory committee's note (emphasis added).

F.3d at 1075); see also, S.W.S. Erectors, Inc. v. Infax, Inc., 72 F.3d 489, 494 (5th Cir. 1996). The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." McCallum Highlands v. Washington Capital Dus, Inc., 66 F.3d 89, 92 (5th Cir. 1995), as revised on denial of rehearing, 70 F.3d 26 (5th Cir. 1995). Unless there is sufficient evidence for a jury to return a verdict in the nonmovant's favor, there is no genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-51, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986). When the nonmovant has the burden of proof at trial, he "must come forward with evidence which would be sufficient to enable it to survive a motion for directed verdict at trial." Stults v. Conoco, Inc., 76 F.3d 651, 656 (5th Cir. 1996). If the nonmovant can not meet this burden, then "the motion for summary judgment must be granted." Id., Little, 37 F.3d at 1076.

In order to determine whether or not summary judgment should be granted, an examination of the substantive law is essential. Substantive law will identify which facts are material in that "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. at 248, 106 S. Ct. at 2510.

## II.   Scope of the Contract

Much ink has been spilled bickering over the sequence of events leading up to the formation of the contract between JLM and Pratt Paper. See Record Document 20, 26, 32, 36, 42, 43, 52, 53, 56, 57). After over a year of brief writing exploring various arguments made and subsequently withdrawn by the parties, including five supplemental memoranda and numerous replies, the Court finds itself back at the exact spot when all this began with the Motion to Dismiss for Improper Venue: whether the Standard Terms not orally

negotiated but nevertheless attached to JLM's proposal are part of the contract. Id.

As this case is before this Court on diversity of citizenship subject matter jurisdiction, the law of the forum state, Louisiana, governs the choice of law analysis.  DP Concrete Products, LLC v. Am. Spring Wire Corp., 2010 WL 147977 (W.D. La. Jan. 13, 2010). See also Delhomme Industries, Inc. v. Houston Beechcraft, Inc., 669 F.2d 1049 (5th Cir.1982) Under Louisiana law, parties may stipulate which state's law governs future disputes unless that law contradicts public policy.  See La. Civ.Code art. 3540.  However, "'preliminary' issues that pertain to the existence of the choice of law clause, such as consent and vices of consent, are governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue." See La. Civ.Code art. 3540, cmt. d; La. Civ.Code art. 3537; Hollybrook Cottonseed Processing, LLC v. Carver, Inc., 2010 WL 1416781 (W.D. La. Apr. 1, 2010).

The heart of Pratt Paper's objection to the Motion to Dismiss for Improper Venue rests on its argument they did not consent to be bound by the Standard Terms included in JLM's contract offer. These issues, when a contract was actually formed and what documents comprise the contract, are decided according to the law of the state whose policies would be most seriously impaired if its law were not applied.  See Holleybrook, 2010 WL 1416781  *3. (citing La. Civ.Code arts. 3537, 3540).  Louisiana is the state most directly affected by the contract because the purpose of this contract was to repair printing equipment physically located in Louisiana.  However, at this juncture the Court need not undertake an in-depth analysis of all factors listed in Louisiana Civil Code Article 3537 as

they relate to Louisiana and Wisconsin's public policy interests in this contract.[2] Regardless of whether this Court proceeds with an analysis under Louisiana or Wisconsin substantive law, the result does not change.  Furthermore, JLM concedes that Wisconsin and Louisiana are consistent on this issue.  Neither party objects to the application of Louisiana substantive law governing the formation of the contract issue and both parties have included detailed analysis of the application and ramifications of Louisiana contract law.  Therefore, the Court will apply Louisiana law to determine the scope of the contract entered into between JLM and Pratt Paper.

Louisiana Civil Code Article 1927 provides the following legal standard to contract formation:

> A contract is formed by the consent of the parties established through offer and acceptance.
>
> Unless the law prescribes a certain formality for the intended contract, offer and acceptance may be made orally, in writing, or by action or inaction that under the circumstances is clearly indicative of consent.
>
> Unless otherwise specified in the offer, there need not be conformity between the manner in which the offer is made and the manner in which the acceptance is made.

La. Civ. Code art. 1927.  Pratt Paper has not cited any statute or case prescribing a certain

---

[2]In determining which state has a great public polcty interest under Louisiana Civil Code Article 3537, the Court evaluates "the strength and pertinence of the relevant policies of the involved states in the light of: (1) the pertinent contacts of each state to the parties and the transaction, including the place of negotiation, formation, and performance of the contract, the location of the object of the contract, and the place of domicile, habitual residence, or business of the parties; (2) the nature, type, and purpose of the contract; and (3) the policies referred to in Article 3515, as well as the policies of facilitating the orderly planning of transactions, of promoting multistate commercial intercourse, and of protecting one party from undue imposition by the other."  La. Civ. Code art. 3537

formality which the type of contract at hand must follow; therefore, the offer and acceptance could have been make either orally, in writing, or by action/inaction of the parties which clearly indicate consent.  See La. Civ. Code art. 1927.   Additionally, Pratt Paper's acceptance need not be given in the same manner- through a signed email- as JLM's initial offer.  Id.

The parties have stipulated that on June 15, 2010, JLM sent an email to Pratt which contained two attachments: the proposal (which specifically notes that the "[t]erms of service" were attached) and the Standard Terms.  Pratt Paper has acknowledged receipt of the Standard Terms and has not provided any evidence indicating that it could not, or chose not to, open the Standard Terms attachment.  The attached Standard Terms were clearly part of the initial contract offer as they were both included in the email and referenced in the proposal.   There is also no dispute that Pratt Paper's representative accepted JLM's offer without discussing, rejecting, or modifying JLM's Standard Terms. Record Document 53 at 2.  While Pratt Paper never specifically discussed the Standard Terms when orally accepting the proposal or during the subsequent emails discussing the logistics of commencing the repairs, they were aware that the Standard Terms were included as part of the offer and also referenced in the proposal they accepted.  It is clear from the text of the proposal that acceptance of the offer was conditioned upon, and subject to, the "Terms of service attached."  Pratt Paper accepted the proposal, therefore, they accepted of the Standard Terms which where referenced and attached.

Pratt Paper's argument that it was unclear whether the proposal's use of the phrase "Terms of service attached" is a reference to the attachment labeled "Standard Terms and Conditions of Sale" or to the terms found in the proposal is wholly without merit.  While the

proposal does include a section labeled "TERMS," this section is not attached to the proposal; it is part of proposal.  The proposal clearly refers to other terms that are "attached," leaving only one other attached document that could possibly be conceived as the attachment referred to as "Terms of service attached."  It would be wholly unreasonable to interpret the email attachment labeled "JLM Standard Terms and Conditions of Sale" as anything other than the terms referenced in the proposal.

Furthermore, Pratt Paper incorrectly argues that JLM's standard terms should not be included as part of the contract because they were included as a separate attachment to the proposal and never further negotiated.  Under Louisiana law, interpretation of a contract is the determination of the common intent of the parties."  La. Civ. Code art. 2045.  However, when the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent.  La. Civ. Code art. 2046.  While Pratt Paper argues that the lack of negotiation over the attached terms is evidence that it never intended for the terms to be included in the contract, such an external inquiry into the subject matter of negotiations is improper. The words of the contract at issue clearly and explicitly refer to terms of service being attached.  It is hardly an absurd consequence to hold that the phrase "Terms of service attached" refer to the only other attachment to the email which is labeled "Standard Terms and Conditions of Sale."  As such, the Court is not inclined to look beyond the words of the contract to determine intent.

Furthermore, in today's business environment, the use of e-mails, and more

specifically email attachments, are commonplace during negotiations.[3]  In fact, the proposal containing the main substance of the contract was included in the email as an attachment. The fact that the standard terms were included as a second attachment to the email, and not in the same attachment as the proposal, is irrelevant.  Not only was it obvious that there were two attachments to the email, but the proposal, actually includes a note stating the "[t]erms of service are attached."   A sophisticated business such as Pratt Paper, who regularly uses email, was clearly on notice that the proposal was subject to certain terms and conditions attached.  If Pratt disagreed with the inclusion of these terms, they could have simply rejected the Standard Terms.

The Court agrees with JLM's contention that Pratt Paper's argument regarding the standard terms is disingenuous.  Earlier in this litigation, Pratt Paper sought to have this Court enforce Pratt Paper's own "General Terms" which were only referenced, but never actually included in their standard purchase order (Record Document 26 at 3).   Now, however, Pratt Paper seeks to have this Court disregard JLM's standard terms which were referenced and fully included in the offer.   Furthermore, the Court is confused by Pratt Paper's argument that the forum selection clause is "buried in small print" and should therefore be excluded from the contract.  It should be noted that JLM's standard terms were only two pages in length, far shorter than many standard terms included in commercial contracts.  Pratt Paper is not a individual plaintiff with no legal representation; rather, they are a large, sophisticated company with the resources to hire an attorney to review the two pages of terms.  For the Court to nullify that clause based on the argument that it was on

---

[3]For example, the electronic filing system that this court uses incorporates attachments as part of the record.

page two of a two page document would essentially set the precedent to render all commercial contracts' standard terms void, an action this Court is not willing to take.

### III. Forum Selection Clause

While it is clear to this Court that the Standard Terms as a whole are included in the contract, the specific forum selection clause at issue is ambiguous, making it permissive rather than mandatory at this stage in the litigation.

Clause 11-h of the Standard Terms states the following:

> Any dispute arising out of or in connection with the Contract, which the Parties are not able to settle amicably within 3 months from the first written request for such settlement, shall be finally settled in the Outagamie County Court in Appleton WI and shall be conducted in the English language.  Judgment upon the award rendered by the Court shall be binding and final.

Record Document 17-1.

Under Fifth Circuit case law, the <u>Bremen</u> presumption of validity only applies to mandatory forum selection clauses.  <u>Caldas & Sons, Inc. v. Willingham</u>, 17 F.3d 123, 127 (5th Cir. 1994)(citing <u>Keaty v. Freeport Indonesia, Inc.</u>, 503 F.2d 955 (5th Cir.1974).  Where a forum selection clause is ambiguous and subject to more than one reasonable interpretation, the clause is properly construed as permissive.  <u>Id.</u>  Furthermore, the Fifth Circuit has held that where a forum selection clause is subject to opposing, yet reasonable interpretations, it must be construed more strongly against its drafter. <u>See</u> <u>Keaty</u>, 503 F.2d at 957.

Applying these principles, it is clear that the forum selection clause in the contract at issue is permissive.  The words, "first written request for such settlement" and "finally settled in the Outagamie County Court," when taken in conjunction with each other, are

ambiguous phrases subject to more than one reasonable interpretation.  Initially, it is unclear whether the words "settlement" and "settled" are a reference to litigation in general or only a reference to the limited and more often used definition found in Black's Law Dictionary: An agreement *ending* a dispute or lawsuit. Black's Law Dictionary (9th ed. 2009)(Emphasis added).  Interpreting the contract's use of the term settled in accordance with the Blacks Law Dictionary's definition is bolstered by the phrase, "first written request for such settlement."

Even if the word "settled" can be substituted somehow as a synonym for "commencing litigation," the terms "first written request for such settlement" and "finally" further adds to the ambiguity and complicates the clause.  It is entirely possible for a dispute to be litigated or "settled" in one jurisdiction with the parties subsequently filing for the enforcement of a foreign judgment in Outagamie County Court in order for the dispute to be "finally settled."  The Court is not convinced that the term "finally settled" precludes the commencement of litigation in a venue other than Outagamie County Court.   Rather, the forum selection clause can be reasonably interpreted to simply require the parties to submit to the jurisdiction of the Outagamie County Court once the dispute has been resolved in order to the have a final judgment enforced by the Outagamie County Court.

There is no dispute that JLM drafted the language found in the Standard Terms of the contract and therefore is to be construed more strongly against its drafter.   Use of the language  "first written request for such settlement" in connection with "finally settled in the Outagamie County Court" results in ambiguous phrases subject to more than one reasonable interpretation.   The Court hereby finds that JLM's Standard Terms are permissive, not mandatory, given the forum selection clause's ambiguity.

**CONCLUSION**

Based on the foregoing analysis, the Court finds that as a matter of law, the attachment containing the JLM's Standard Terms is part of the contract between JLM and Pratt Paper.  However, the forum selection clause contained in the Standard Terms is ambiguous.  It is reasonable to interpret the forum selection clause to only mandate use of the Outagamie County Court in Appleton Wisconsin to consummate final settlement.

Accordingly, **IT IS ORDERED THAT** the foregoing motion (Record Document 13) be and is hereby **DENIED.**  An Order consistent with the terms of the instant Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 29th day of January, 2013.

S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE