**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

PRATT PAPER (LA.), LLC                          CIVIL ACTION NO. 11-1556

VERSUS                                          JUDGE S. MAURICE HICKS, JR.

JLM ADVANCED TECHNICAL                          MAGISTRATE JUDGE HORNSBY
SERVICES, INC. AND TRAVELERS
INSURANCE COMPANY

**MEMORANDUM RULING**

Before the Court is a Motion for Partial Summary Judgment filed by Defendant,

Travelers Insurance Company ("Travelers").  (Record Document 93).  Defendant seeks a

partial judgment that the Travelers Policies issued to JLM does not cover the cost to repair

or replace the Suction Press Roll.  Id.  Plaintiff Pratt Paper ("Pratt") and Defendant JLM

Advanced Technical services ("JLM") oppose the motion.  (Record Documents 96 and 97).

 For the reasons which follow, the Motion for Partial Summary Judgment is **GRANTED** as

to the j(6) exclusion.

**I.      BACKGROUND.**

Pratt contracted with JLM in July 2010 to install a spare Suction Press Roll in the

paper machine at Pratt's mill. (Record Document 1-2 at 1).  Installing the Suction Press Roll

was one of the main tasks that JLM was hired to perform under its contract.  During the

installation, the Suction Press Roll fell to the concrete floor of the paper mill and sustained

damage while JLM was in the process of installing it. (Record Document 1-2 at 3,4).

Travelers issued a commercial general liability policy to JLM with a policy period from

September 17, 2009 to September 17, 2010. (Record Document 93-6).  Pratt filed suit

against JLM and Travelers to recover for the damages to the Suction Press Roll.  Travelers

argues that there are two exclusions within the commercial general liability policy that

prevent coverage under Travelers' Policies for the cost to repair or replace the Suction Press Roll or any resultant loss income. Id.  Exclusion j(4) excludes coverage when there is "property damage" to "personal property in the care, custody or control of the insured." The second exclusion, j(6), excludes coverage when there is "property damage" to "that particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it."  Id.

Travelers alleges that the work of installing the Suction Press Roll was being performed by JLM employees under the supervision of a JLM foreman. (Record Document 93-8).  They also allege that a JLM employee was operating the crane used to lift the Suction Press Roll and that a JLM employee was holding the tagline to keep the Suction Press Roll for installation at the time of the accident. (Record Documents 93-8, 93-9).

JLM alleges that Pratt in fact maintained control over both the mill and the Suction Press Roll at all times, and that Pratt was to provide all lifting mechanism for the mill. (Record Document 96-1). They additionally allege that Pratt dictated the types of supports used, oversaw the project and had a company liaison, Bryan Nugent, who oversaw the quality and workmanship on each of the projects. Id.

## II.    LAW AND ANALYSIS.

### A.    Partial Summary Judgment Standard.

Rule 56(a) provides, in pertinent part:

> Motion for Summary Judgment or Partial Summary Judgment. A party may move for summary judgment, identifying each claim or defense–or the part of each claim or defense–on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

F.R.C.P. 56(a) (emphasis added); see also Quality Infusion Care, Inc. v. Health Care Serv. Corp., 628 F.3d 725, 728 (5th Cir.2010).[1]  "A  genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Quality Infusion Care, Inc., 628 F.3d at 728.  "Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir.2004).

If the movant demonstrates the absence of a genuine dispute of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial."  Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 141 (5th Cir.2004).  Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted.  See Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir.2005).

"A partial summary judgment order is not a final judgment but is merely a pre-trial adjudication that certain issues are established for trial of the case."  Streber v. Hunter, 221 F.3d 701, 737 (5th Cir.2000).  Partial summary judgment serves the purpose of rooting out, narrowing, and focusing the issues for trial.  See Calpetco 1981 v. Marshall Exploration, Inc., 989 F.2d 1408, 1415 (5th Cir.1993).

### B. Choice of Law

The Travelers Policies were negotiated, brokered, and delivered in Wisconsin (See

---

[1]The Court notes that amended Rule 56 requires that there be "no genuine dispute as to any material fact," but this change does not alter the Court's analysis.  F.R.C.P. 56(a) and Advisory Committee Notes.

Record Document 93-2, Ex. C), therefore Travelers argues that the law of Wisconsin would govern the interpretation of the policy should a true conflict exist between Wisconsin law and Louisiana law.  Travelers has made clear that they believe "there is no true conflict between Wisconsin law and Louisiana law concerning the interpretation and application of the exclusions relied on." (Record Document 93-2).  Both JLM and Pratt Paper make similar arguments in their Memoranda in Opposition.

Louisiana and Wisconsin law require that "insurance policies are interpreted in accordance with the ordinary rules of contract interpretation." Id.  Louisiana courts have applied exclusion j(4), also known as the care, custody, or control exclusion, to "damage to property that is the actual subject of the insured's repair, installation, construction or transport contract, but not other property that is merely adjacent to the contracted object." South Louisiana Ethanol, LLC v. Messer, 932 F. Supp. 2d 735, 741 (E.D. La. 2013). Wisconsin courts, similarly, have held that care, custody and control exclusions bar coverage "when the property at issue is under the supervision of the insured and is a necessary element of the work being performed by the insured under the contract." Accola v. Fontana Builders, Inc. 330 Wis. 2d 41, 46 (Wis. Ct. App. 2010).  Both states have held that "the general intent of a 'business risk exclusion' such as j(6) is to preclude recovery by an insured for its faulty workmanship."  Id.

The parties have provided analysis using both Wisconsin and Louisiana law and there appears to be no conflict between the two laws.  The analysis required under Wisconsin and Louisiana law is almost identical.

### C.  Care, Custody or Control

The Travelers policy excludes coverage under j(4) for damage when the "personal

property is in the care, custody or control of the insured," with JLM being the insured in this case. (Record Document 93).  Both Travelers and JLM provide conflicting evidence as to who  maintained care, custody or control of the property during the installation.  Travelers has cited to the deposition of Ricky Nolan, the job site superintendent for the JLM shutdown, in which he was asked,

> Q: And it is your understanding that the JLM employees were the ones who rigged the suction press roll up using the rigging equipment before the accident happened; right?
> A: Yes.

Record Document 93-8 at 35.

Nolan was further asked,

> Q: But as far as the means of how JLM was going to accomplish changing out the suction press roll, the JLM people handled that, right?
> A: Yes.

Id. at 38.

JLM asserts in their Opposition, that "Pratt maintained control over both the mill and the Suction Press Roll at all times."  (Record Document 96).  They also provide deposition testimony from James Hickman ("Hickman"), the owner of JLM, as to who had care, custody or control in this matter.  Hickman is quoted as saying:

> Well, in this case, it was a bit different.  This machine had never been apart and only the Pratt people had working knowledge of this machine, so, they instructed us how many people to bring in and which disciplines they wanted.

Record Document 96-1 at 14.  Hickman is further questioned:

> Q: And the statement here, mill cart system and belly band straps will be required for this task, I guess that could be read, required, i.e. [JLM is] going to bring them?
>
> A: No. No sir. No sir. [Pratt] made it clear to me that they were providing all lifting mechanism for the mill because it was such an important roll to [Pratt].

Id. at 23.

It is clear from the deposition testimony provided by both Pratt, Travelers, and JLM, that there is a genuine dispute of material fact as to who had the care, custody or control of the suction press roll at the time it fell to the ground.  The Plaintiff and Defendant have provided conflicting deposition testimony on this issue, which has caused a credibility issue that must be decided by the trier of fact.

### D. Property Damage

The j(6) exclusion in the Commercial General Liability policy excludes coverage for "property damage to that particular part of any property that must be restored, repaired or replaced because your work was incorrectly performed on it." (Record Document 93-6 at 4).  "Property damage" is further defined as "physical injury to tangible property, including all resulting loss of use of that property." Id. at 15.  The policy defines "your work" as "work or operations performed by you or on your behalf" and "materials, parts or equipment furnished in connection with such work or operations." Id.

Travelers has argued that this "work product" exclusion is "intended to avoid the possibility that insurance will be used to repair or replace an insured's defective products or faulty workmanship." (Record Document 93-2).  They argue that the suction press roll falling to the ground during the installation process falls within the exclusion, based on their interpretation of "work" including the installation of the Suction Press Roll.  In order for the exclusion to be applicable the Suction Press Roll must have been "that particular part of property" on which JLM was performing work when the damage occurred. (Record Document 93).  It is not disputed that the Suction Press Roll is the piece of property at issue in this matter.  The real question arises as to whether JLM installing the Suction

Press Roll falls within the meaning of "work" or "operation" performed on the Suction Press Roll.

Within the policy itself there is no definition of the term "work" or "operation."  JLM maintains that they did not "work on the Suction Press Roll, but rather were 'merely replacing one Suction Press Roll for another without actually working on it.'"  (Record Document 96).  Pratt argues that "the damage to the Suction Press Roll was not the result of JLM 'incorrectly' performing work 'on' the Suction Press Roll.  It was the result of an occurrence which was the tearing of the belly band/strap which allowed the Suction Press Roll to fall to the concrete floor."  (Record Document 97).

It is clear that there is a question as to the meaning of the words "work" and "operation."   Generally, for the interpretation of insurance contracts, "the judicial responsibility is the determination of the common intent of the parties."  See La. Civ. Code. Art. 2045.  If the words of the policy are clear and express the intent of the parties, the agreement is to be enforced as written.  See La. Civ. Code Art. 2046.  However, if there is any ambiguity or doubt, the court must attempt to ascertain the common intention of the parties by reference to other phrases within the context of the policy, usually construing the language in accordance with its general and popular use.  See La. Civ. Code Arts. 2048, 2050.  Finally, if the insurance policy is susceptible of two or more reasonable interpretations then any such ambiguity must be construed in favor of insured and against the insurer.  See La. Civ. Code Art. 2056.

JLM was hired by Pratt to perform a number of tasks, including installing a new Suction Press Roll.  The parties have complicated the question of the meaning of "work or operation" rather than rely on the generally understood meaning.  In this instance, the

"work" that JLM performed were the tasks that Pratt hired them to perform.  The j(6)

exclusion has the element of "property damage to that particular part of any property that

must be restored, repaired or replaced" which in this case is clearly the damage to the

Suction Press Roll, resulting from the belly band breaking and the Suction Press Roll falling

to the floor.  The second half of the j(6) exclusion requires that the damage be a result of

"your work was incorrectly performed on it".  The Suction Press Roll fell to the ground while

it was being installed, which was the "work" that JLM was hired to perform.  Because the

installation of the Suction Press Roll falls within the definition of the term "work", the j(6)

exclusion must apply.[2]  Summary judgment on this issue is, therefore, **GRANTED**.


**III.      CONCLUSION.**

        Based on the foregoing analysis, the Motion for Partial Summary Judgment filed by

Travelers Property Casualty Company of America is **GRANTED** as to the j(6) exclusion.

The "work product" exclusion is deemed to apply to the Suction Press Roll, such that

Travelers is not obligated to provide coverage.  The issue of whether there is a coverage

obligation for the alleged damage to the concrete flooring, the Top Wire Drive Roll or Drive

Roll Cover or the hand rail remains.

---

        [2]Travelers is not seeking a determination regarding its coverage obligations, if any, for damage to other property, including alleged damage to (a) the concrete flooring, (b) any portion of the Top Wire Drive Roll or Drive Roll Cover, or (c) the hand rail.  Travelers has reserved any and all defenses to coverage it has or may have related to those alleged damages.  (Record Document 93-2).

**IT IS SO ORDERED.**

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 29th day of September, 2015.

S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE