UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

PRATT PAPER (LA), LLC                     CIVIL ACTION NO. 11-1556

VERSUS                                    JUDGE S. MAURICE HICKS, JR.

JLM ADVANCED TECHNICAL                    MAGISTRATE JUDGE HORNSBY
SERVICES, INC. AND TRAVELERS
INSURANCE COMPANY

**MEMORANDUM RULING**

Before the Court is Defendant JLM Advanced Technical Services' ("JLM") "Motion for Leave to File Motion for Partial Summary Judgment" (Record Document 109) after the deadline for dispositive motions as set out in the scheduling order for the instant case. Pratt Paper (LA), LLC ("Pratt") opposes the motion. See Record Document 110. For the reasons that follow, the Court hereby **DENIES** JLM's "Motion for Leave to File Partial Summary Judgment."

**FACTUAL AND PROCEDURAL BACKGROUND**

JLM is a provider of mechanical and technical services for manufacturing plants. Pratt is a paper manufacturing company. This case involves an incident that occurred at Pratt's Shreveport mill when JLM was hired to install a new Suction Press Roll and conduct some other repairs at the mill. See Record Document 1-2 at ¶ 2.

On June 15, 2010, JLM sent an email to Pratt which contained two attachments regarding the proposed work for the mill: the JLM price quotation and the Standard Terms and Conditions of Sale. See Record Document 17-1 at 2. The first attachment, JLM's quotation, included both the price for performing the requested repairs and a section labeled: "NOTES: Terms of serviced attached." Record Document 17-1 at 6. The second

attachment contained a two page document titled "Standard Terms and Conditions of Sale." Id. Page 2 of the Standard Terms and Conditions of Sale included the following section titled "Limitations of Liability":

> Notwithstanding anything else to the contrary contained in this contract, JLM's liability to buyer shall not exceed buyer's direct out-of-pocket damages, and in such case only to the extent caused by JLM's negligent acts or omissions. JLM shall not assume any liability for compliance of safety or environmental regulations beyond its scope of supply or work. JLM shall in no event or circumstance be liable for any indirect, incidental, special, consequential, or punitive damages, costs or losses whatsoever, including, but not limited to:
> - Loss of revenue, profit, use or production,
> - Downtime or plant shut-downs
> - Raw material, energy, utility, labour or capital losses or costs, or for
> - Claims raised by buyer's customers; and
> 
> Whether based on breach of contract or warranty, contract termination, negligence, tort, strict liability, indemnity, at law or in equity, or otherwise. *In addition, JLM's maximum monetary liability under this contract shall not exceed an amount equal to 10 % of the price* (with the exception of Article 10, B (II) as set forth therein).[1]

Record Document 109-5 at 2 (emphasis added).

Pratt orally agreed to the proposed price quotation and JLM undertook the work as outlined in the proposal. On July 14, 2010, JLM began to install the new Suction Press Roll at its mill in Shreveport. See Record Document 1-2 at ¶ 2. During the installation process, the Suction Press Roll fell approximately eight to ten feet to the concrete floor of the mill. See id. at ¶ ¶ 3-6. Both the fall itself and attempts to secure the Suction Press Roll after the fall caused damage to the Suction Press Roll itself, the concrete floor of the mill, and another piece of equipment called the Top Wire Drive Roll. See id. Pratt sued JLM and Traveler's Property Casualty Company of America ("Travelers") on July 14, 2011

---

[1] This section, including the title, was in all capital letters. See Record Document 109-5 at 2.

in the First Judicial District Court in Caddo Parish, Louisiana. See id. at 1. Traveler's removed the case to this Court on August 25, 2011. See id.

On January 31, 2013, this Court issued a Memorandum Ruling denying JLM's Motion to Dismiss for Improper Venue in which the Court held that the Standard Terms are a part of the contract between the parties as a matter of law. See Record Document 62 at 10. On September 29, 2015, this Court issued a Memorandum Ruling granting Travelers' Partial Motion for Summary Judgment. See Record Document 100. JLM now seeks leave of the Court to file a Motion for Partial Summary Judgment after the deadline for dispositive motions as set out in the scheduling order. See Record Document 109. In its proposed Partial Motion for Summary Judgment, JLM argues that the Court should rule that, as a matter of law, the contract's stipulated damages clause[2] limits Pratt's recovery, if any, to ten percent of the contract price. See Record Document 109-3. Pratt opposes granting leave to file the proposed Partial Motion for Summary Judgment. See Record Document 110.

## LAW AND ANALYSIS

### I.   LEGAL STANDARDS

Fed. R. Civ. P. 16(b)(4) provides that "a schedule may be modified only for good cause and with the judge's consent." The "good cause" standard focuses on the diligence of the party seeking to modify the scheduling order. Blackburn v. Cypress Equities I, LP,

---

[2] The Court will use the term "stipulated damages clause" to refer to the clause in the contract itself, while the term "liquidated damages clause" will be used only in the event that the clause is found to be reasonable and therefore enforceable. The courts of the State of Wisconsin, whose law governs the interpretation of the contract under the contract's terms, have made this semantic distinction; therefore, the Court will do the same. See Wassenaar v. Panos, 111 Wis.2d 518, 521 (1983); see also Rainbow Country Rentals & Retail, Inc. v. Ameritech Publ'g, Inc., 286 Wis.2d 170, 186 n.2 (2005).

2014 U.S. Dist. LEXIS 134877 at *45 (N.D. Tex. 2014). Mere inadvertence on the part of the movant, and the absence of prejudice to the nonmovant, are insufficient to establish "good cause." Id. "Instead, the movant must show that, despite its diligence, it could not reasonably have met the scheduling deadline." Id.

The decision to permit an untimely motion is ultimately at the judge's discretion. See S&W Enters., L.L.C. v. Southtrust Bank of Ala., 315 F.3d 533, 536-37 (5th Cir. 2003). To determine whether the movant has demonstrated good cause such that the judge should allow an untimely motion, the court should consider four factors: (1) the party's explanation for the failure to timely file the motion, (2) the importance of the requested relief, (3) potential prejudice in granting the relief, and (4) the availability of a continuance to cure such prejudice. See id. at 536.

**II.   ANALYSIS**

JLM argues that because (1) Rule 56 expressly contemplates that parties may file for partial summary judgment and (2) such motions can help narrow the issues for trial, the Court should allow it to file a late Motion for Partial Summary Judgment. See Record Document 109. Pratt advances two arguments that that Court should not grant leave to file an untimely motion. See Record Document 110. First, Pratt argues that JLM could have filed its proposed motion in a timely manner because it was aware of the contents of the Standard Terms and Conditions throughout the life of this lawsuit. See id. Second, Pratt argues that under the law governing the interpretation of the contract, the enforceability of the stipulated damages clause in the contract cannot be decided solely upon JLM's proposed Motion. See id.; see Record Document 109.

First, JLM has not met its burden of demonstrating "good cause" for filing a late motion. Fed. R. Civ. P. 16(b)(4). It appears that JLM likely could have filed the proposed motion at an earlier date, as this Court held that the Standard Terms and Conditions of Sale were a part of the contract as a matter of law on January 31, 2013. See Record Document 62 at 10. Though it is true that Rule 56 expressly contemplates partial motions for summary judgement that can narrow the issues for trial, this alone is not an adequate reason for allowing a late motion under the "good cause" standard.

Second, the Court likely could not decide the issue of maximum damages based solely upon the proposed Motion for Partial Summary Judgment and a response thereto. The terms of the contract provide that Wisconsin law governs the construction of the contract's terms. See Record Document 109-5 at 2. Under Wisconsin law, a stipulated damages clause is enforceable if it is reasonable. See Wassenaar, 111 Wis.2d at 526 ("the overall single test of validity is whether the clause is reasonable under the circumstances"); see also Rainbow Country, 286 Wis.2d at 188. Three factors are considered in determining the reasonableness of a stipulated damages clause: "(1) Did the parties intend to provide for damages or for a penalty? (2) Is the injury caused by the breach one that is difficult or incapable of accurate estimation at the time of contract? and (3) Are the stipulated damages a reasonable forecast of the harm caused by the breach?" Wassenaar, 111 Wis.2d at 529-30. Additionally, a court must take the competing policies supporting and opposing enforcement of stipulated damages clauses into consideration when making a reasonableness determination. See id. at 533.

The second and third factors are the most important, are intertwined, and require a combined "prospective-retrospective" approach, or what some have termed a "second-

look" approach. Id. at 529-33; see also Trey Qualls, Take a Second-Look at Liquidated Damages in Texas (Regardless of What the Texas Supreme Court Says), 67 Baylor L. Rev. 666, 669-674 (2015) (containing a helpful discussion of the differences between a "single-look" test and the "second-look" test for determining reasonableness).

This approach requires a court to first consider the reasonableness of the stipulated damages clause from the perspective of the parties at the time they entered the contract, prospectively considering the information available to them at that time and the difficulty of ascertaining what damages might be suffered in the event of breach. See Wassenaar, 111 Wis.2d at 530-32. Next, the court must consider whether retrospectively, in light of the information available after the breach, the stipulated damages were a reasonable estimate of the harm suffered. See id. at 531-32. "If the damages provided for in the contract are grossly disproportionate to the actual harm sustained, the courts usually conclude that the parties' original expectations were unreasonable." Id. at 532.

Thus, "though the validity of a stipulated damages clause is a question of law for the trial judge . . . that legal conclusion will frequently be derived from a resolution of disputed facts or inferences." Id. at 524-25. Though a judge must inquire into "all relevant circumstances" in deciding whether the stipulated damages clause is reasonable, factual determinations that are particularly important for the judge are "the existence and extent of the anticipated and actual injury to the nonbreaching party."[3] Id. at 524-25.

---

[3] The Wassenaar opinion's holding that the trial judge must make both the legal decision regarding reasonableness and the factual finding necessary to making this decision raises some interesting questions regarding the allocation of fact-finding between judge and jury in jury trials in this context. 111 Wis.2d at 525. Fortunately, as the instant case is set for bench trial, the Court need not consider this issue.

Because the controlling law for determining the enforceability of the stipulated damages clause requires consideration of certain predicate facts, particularly the actual damages (if ascertainable) incurred by Pratt, it would be difficult to rule on whether the stipulated damages clause is enforceable on summary judgement at all, much less in the short time before trial. Indeed, judging from the age of the case and the fact that the parties have fought over numerous issues throughout its life, the Court presumes that there would be genuine issues of material fact on a major issue like the amount of actual damages suffered by Pratt. Such a conclusion would of course preclude summary judgment and necessitate proceeding to trial, reinforcing the Court's decision not to grant the Motion for Leave to file a Motion for Partial Summary Judgment. See Fed. R. Civ. P. 56. The bench trial in this case is set for November 15, 2016. See Record Document 108. The Court finds that addressing the issue at trial with the benefit of all available facts is a better way of dealing with whether the stipulated damages clause is enforceable than a summary judgment motion that is unlikely to succeed.

Therefore, JLM's "Motion for Leave to File Motion for Partial Summary Judgment" is hereby **DENIED**.

## CONCLUSION

The Court finds that denial of JLM's "Motion for Leave to File Motion for Partial Summary Judgment" is appropriate because: (1) JLM did not show good cause, and (2) the law controlling the issue to be raised on summary judgment both (a) makes it unlikely that summary judgment would be granted and (b) makes the question at issue more amenable to deciding after a full trial with all necessary facts. Therefore,

**IT IS ORDERED** that JLM's "Motion for Leave to File Motion for Partial Summary Judgment" be and is hereby **DENIED**. An order consistent with the terms of the instant Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this the 6th day of October, 2016.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE